IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMEEL DEQUAN WALSTON, | Civil No. 3:22-cv-1783 |
| Plaintiff | (Judge Mariani) |
| v. | |
| WARDEN CRAIG LOWE, ASSISTANT WARDEN JONATHAN ROMANCE, | |
| Defendants | |

**MEMORANDUM**

Plaintiff Jameel DeQuan Walston ("Walston"), a pretrial detainee housed at the Pike County Correctional Facility, in Lords Valley, Pennsylvania, initiated this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). Named as Defendants are Warden Craig Lowe and Assistant Warden Jonathan Romance. Presently before the Court is Defendants' Rule 12(b) motion (Doc. 16) to dismiss. For the reasons set forth below, the Court will grant the motion.

**I.   Allegations of the Complaint**

In October 2022, there was an outbreak of COVID-19 at the Pike County Correctional Facility. (Doc. 1, p. 10). Walston alleges that more than twenty (20) inmates tested positive for COVID-19, including his cellmate. (*Id.*). As a result of the outbreak, Walston was quarantined in the Restricted Housing Unit ("RHU") for twelve (12) days—from October 25, 2022 to November 6, 2022. (*Id.*). During his stay in the RHU, Walston lost

some of the privileges he enjoyed when he was housed in general population. (*Id.*). He alleges that, during his stay in the RHU, he was only allowed one hour of recreation per day and there were insufficient tablets on the unit, which limited the amount of phone calls he could place to his family. (*Id.*).

Walston states that other inmates were also quarantined, except for inmates working in the kitchen. (*Id.* at pp. 10-11). He asserts that the kitchen staff inmates were not quarantined because they were tested every day and were not exposed to infected inmates. (*Id.* at p. 11). These non-infected inmates were housed in the gymnasium. (*Id.*). Walston claims that he should have been tested daily instead of being quarantined in the RHU. (*Id.*).

II. <u>Legal Standard</u>

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level."

*Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

*Id.*

### III. Discussion

#### A. Fourteenth Amendment Claims

##### 1. Due Process Claim

The Fourteenth Amendment prohibits the states from depriving "any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Walston was not deprived of a legally cognizable liberty interest. A prisoner can identify a cognizable liberty interest if a punishment "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "In deciding whether a protected liberty interest exists[,] ... we consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions." *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003). Walston does not allege that the conditions of his 12-day confinement in the RHU involved an atypical and significant hardship. Significantly longer stays in restrictive confinement did not implicate a prisoner's liberty interests. *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (concluding that seven months in disciplinary confinement alone did not violate a prisoner's liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (same for fifteen months in administrative custody). The Court understands Walston's concerns regarding the

COVID-19 pandemic, however his relatively short quarantine in the RHU appears to have been an appropriate response to the COVID-19 outbreak at the Pike County Correctional Facility. Walston's due process claim will be dismissed.

### 2. Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citing *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). An equal protection claim can be brought by a "class of one," a plaintiff alleging that he has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003); *see also Jean-Pierre v. Bureau of Prisons*, 497 F. App'x 164, 168 (3d Cir. 2012). If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest. *See Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 423 (3d Cir. 2000). Proof of disparate impact alone, however, is not sufficient to succeed on an equal protection claim; a plaintiff also must prove that the defendant intended to discriminate. *See Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-66 (1977); *Washington v. Davis*, 426 U.S. 229, 242, 244-45 (1976). Thus, discriminatory intent must be a motivating factor in the

decision, even though it need not be the sole motivating factor. *See Vill. of Arlington Heights*, 429 U.S. at 265-66. Moreover, to prove a lack of rational basis, a plaintiff must negate every conceivable rational basis for his differential treatment. *See Bd. of Trustees v. Garrett*, 531 U.S. 356, 367 (2001); *Ramsgate Court Townhome Ass'n v. West Chester Borough*, 313 F.3d 157, 160 (3d Cir. 2002).

Prisoners do not constitute a protected class for Fourteenth Amendment purposes. *See Myrie v. Comm'r, N.J. Dep't of Corr.*, 267 F.3d 251, 263 (3d Cir. 2001). Walston failed to allege that he is a member of a protected class and has not adequately alleged that he was treated differently from others who were similarly situated. Although he alleges that kitchen staff inmates were not quarantined in the RHU, he also explains that the kitchen staff inmates "were not exposed to an infected party." (Doc. 1, p. 11). Walston was presumably exposed to the infectious disease because he was on a housing unit with inmates who tested positive for COVID-19 and his own cellmate tested positive for COVID-19. Thus, he was not similarly situated to the kitchen staff inmates. Walston also failed to identify any personal involvement by either named Defendant that would subject them to liability for a potential equal protection violation. *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 243 (3d Cir. 2008) (to state an equal protection claim on a "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the

difference in treatment"). Walston has not alleged a basis for an equal protection claim and this claim will be dismissed.

### B.     Lack of Personal Involvement

In order to state an actionable civil rights claim, a plaintiff must plead two essential elements: (1) that the conduct complained of was committed by a person acting under color of law, and (2) that said conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *See Groman v. Township of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995); *Shaw by Strain v. Strackhouse*, 920 F.2d 1135, 1141-42 (3d Cir. 1990). Individual liability can be imposed under section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." *Rode*, 845 F.2d at 1207-08; *see also Rizzo v. Goode*, 423 U.S. 362 (1976); *Atkinson v. Taylor*, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. *Evancho*, 423 F.3d at 354; *Rode*, 845 F.2d at 1207-08. Alleging a mere hypothesis that an individual defendant had

personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement. *Rode*, 845 F.2d at 1208.

A review of the complaint confirms that other than being named as Defendants, there exist no factual averments relating to Defendants Lowe and Romance in the body of the complaint. (*See* Doc. 1). Walston fails to identify the particular conduct of the Defendants that allegedly violated his rights. There are no allegations that the Defendants participated in, directed, or knew of and acquiesced in Walston's placement in the RHU. This style of pleading is patently inadequate since it fails to allege facts that give rise to a plausible claim for relief against the Defendants. *Hudson v. City of McKeesport*, 244 F. App'x 519 (3d Cir. 2007) (affirming dismissal of defendant who was only named in caption of case).

Additionally, a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred. *See Rode*, 845 F.2d at 1207. Any attempt by Walston to hold the Defendants liable for the actions of their subordinates is essentially an assertion of respondeat superior liability which seeks to hold them liable based on their supervisory roles. This ground of constitutional liability has been squarely rejected by the courts. *See Rode*, 845 F.2d at 1207. It is well-settled that supervisors "may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. With respect to Lowe's and Romance's supervisory roles of Warden and Assistant Warden, "there are two theories of supervisory liability, one under

which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations." *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted). Walston fails to set forth such allegations, and liability cannot be imposed on Defendants based on their positions and duties as supervisors.[1]

The Court finds that Walston's complaint is bereft of any allegations identifying how Defendants were personally involved in the alleged constitutional deprivations. Accordingly, Defendants' motion to dismiss will be granted on this ground.

### C. Qualified Immunity

Even if Walston had stated colorable constitutional claims, Defendants, in their individual capacities, are entitled to qualified immunity from these claims for damages. In order to establish a civil rights claim, Walston must show the deprivation of a right secured by the United States Constitution or the laws of the United States. However, government officials performing "discretionary functions," are insulated from suit if their conduct did not

---

[1] In his brief in opposition to Defendants' motion to dismiss, Walston states that a command staff sergeant informed him that "the unit as a whole was informed that the higher ups were waiting for a decision on the move of non-infected individuals from the Assistant Warden Jonathan Romance." (Doc. 19 ¶ 8). While this appears to be a claim against Defendant Romance, Walston cannot now raise a claim for the first time in an opposition brief. *See Comm. of Pa., ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1981) (providing that it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss"). In addition, this claim appears to rely on a respondeat superior theory of liability, and Defendant Romance is entitled to dismissal.

9

violate a "clearly established statutory or constitutional right[ ] of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson*, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of the proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson*, 555

U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). As stated, the Court finds that Walston failed to set forth any cognizable claims against Defendants and failed to establish the violation of a constitutional right. Therefore, Defendants are protected from liability by qualified immunity.

## IV. Leave to Amend

When a complaint fails to present a prima facie case of liability, district courts must generally grant leave to amend before dismissing the complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002); *Shane v. Fauver*, 213 F.3d 113, 116-17 (3d Cir. 2000). Specifically, the Third Circuit Court of Appeals has admonished that when a complaint is subject to dismissal for failure to state a claim, courts should liberally grant leave to amend "unless such an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 245 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). For the reasons set forth above, Walston's claims are legally and factually flawed; thus, the Court concludes that curative amendment would be futile.

## V. Conclusion

The Court will grant Defendants' motion (Doc. 16) to dismiss. A separate Order shall issue.

Robert D. Mariani
United States District Judge

Dated: April 5, 2023